(163 App. Div. 33)

### ZORN v. PENDLETON et al.

(Supreme Court, Appellate Division, Second Department. June 26, 1914.)

MASTER AND SERVANT (§ 332*)—ACTION FOR INJURY TO THIRD PERSON—QUESTION FOR JURY.

In an action for an injury to plaintiff, caused by a collision with defendant's automobile on the third floor of a motor establishment, as the chauffeur was driving it from the elevator to the paint shop, *held*, under the evidence, a question for the jury whether, at the time of the accident, the chauffeur had ceased to be defendant's servant, and had become the servant of the motor company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–1277; Dec. Dig. § 332.*]

Appeal from Trial Term, Kings County.

Action by Theodore Zorn, an infant, against Edwin S. Pendleton and another. Judgment for defendants, and plaintiff appeals. Reversed, and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Charles J. Belfer, of Brooklyn, for appellant.

Abram I. Elkus, of New York City (Carlisle J. Gleason, of New York City, on the brief), for respondents.

THOMAS, J. The respondent committed to Johnson, his chauffeur, an automobile to deliver to the Ormond Motor Car Company for the purpose of painting it. The Ormond Company occupied three floors of a building, the first and second floors for the storage of cars, and the third floor for repairing and painting cars. Upon arriving at the first and main floor, where the office was, Johnson said to Strobel, the manager, that he had brought the car in for painting, and asked "if he should bring it to the top floor"—"if he should bring it up to the paint shop"—and after an affirmative reply by Strobel the chauffeur ran the car onto the elevator, whereupon Strobel, in the absence of the elevator man, worked the electric button until the lift was halted at the third floor, where Johnson ran the automobile onto the floor and stopped some six feet from the elevator, and waited some 15 minutes pending the removal of another car from the paint shop, when, asked to run it into the paint shop, he cranked the car and, resuming his seat, started the automobile, whereupon it collided with another car about 20 or 25 feet away, and injured the plaintiff, who, as the servant of the Ormond Company, was working about it.

The court decided that, for the purpose of delivering the defendant's car at the paint room from the main floor, the chauffeur was the servant of the Ormond Company, and dismissed the complaint. This was at least a question of fact for the jury. The defendant had endowed Johnson with authority to do two things: (1) To deliver the car to the Ormond Company for painting; (2) to operate the car for the purpose of making such delivery. The car would remain in the custody of Johnson as defendant's agent until delivery made, and his duty as defendant's chauffeur meantime continued. The duty of the Ormond Company as bailee would not begin until such delivery should be made. What thing was done or said on the main floor that enabled the court to decide that delivery was consummated? Was there such delivery from the mere fact that the car stopped after entering on the main floor? That fact alone is not so significant as to imply transfer of custody and control of the car from the owner to the painter. But, aside from that, nothing more was said or done on the main floor that helps defendant's contention.

But the inquiry of the chauffeur whether he should bring the car to the paint shop indicates that Pendleton, as master, was still speaking through Johnson, his agent. Not a word or act preceded this inquiry that in itself shows that Johnson had ceased to be defendant's agent and servant, and had become the servant of the Ormond Company. Under such conditions the chauffeur ran the car onto the elevator, and at the third floor operated it from the elevator. During the ascent the car and chauffeur were in the custody of the Ormond Company as a carrier by elevator, with no other duty or possession or control than

whatever belongs to such a bailee. At the third floor the chauffeur without further word waited for floor space in the paint room, and when it was provided he was asked "to run it in the paint shop," and thereupon started his car forward, and the accident followed. He had been waiting to convey his car to the paint room, and while so waiting there is nothing to indicate that he was waiting as the servant of the Ormond Company. Therefore, when the paint room was cleared sufficiently to permit entrance, and the chauffeur was asked to do that which he was waiting to do, viz., convey the car to the paint shop, the court could not say that the only inference to be drawn was that he had ceased to be defendant's agent and servant and had become that of the Ormond Company.

It is not profitable to review the decisions. The present facts must speak for themselves. Do they permit only the inference that the business at the time was that of the Ormond Company, and that it had taken over the defendant's chauffeur to further it? I think that it is not so. When a person takes his car to a place for repairs, the proposed bailee may indicate where he wishes it delivered, and if the owner comply, in the absence of overruling circumstances, he presumably remains in the custody and control of the car and responsible for its usual operation. I conceive of no different legal conclusion if the owner commit the car to his chauffeur. The car in the present instance was carried to a paint shop on the third floor. Had the paint shop been on the first floor, and the chauffeur been asked to take the car to it, the case would be equivalent. There is no presumption of law that, when a car stops upon its first entrance, a delivery is effected. It is quite as much as is due the defendant to submit to the jury the question whether, at the time the chauffeur started the car forward on the third floor, he had for the purposes of the acts ceased to be defendant's agent and servant, and had become the servant of the Ormond Company.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur.